# In the United States Court of Federal Claims

No. 23-1811

(Filed: January 31, 2024)

```
* * * * * * * * * * * * * * * * *  *
                                    *
REID et al.,                        *
                                    *
                Plaintiffs,         *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant.          *
                                    *
* * * * * * * * * * * * * * * * *  *
```

*Lajuana A. Reid, pro se,* of Oakland, California, *Geneviere D. Hopkins, pro se,* of Boiling Springs, South Carolina, *Gail E. Conner, pro se,* of Braselton, Georgia, and *Linda M. Sharp, pro se,* of Santa Rosa, California.

*Rebecca Sarah Kruser*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C. for defendant.

## MEMORANDUM OPINION AND ORDER

**SOMERS**, Judge.

These *pro se* plaintiffs assert that they were unwitting participants in a clandestine government experiment involving the implantation of bio-medical devices into their bodies during routine surgeries and medical appointments. Despite alleging a vast conspiracy between the Department of Defense, various hedge funds, and medical professions, Plaintiffs fail to state a claim within this Court's jurisdiction. As such, for the following reasons, the Court grants the government's motion to dismiss.

## BACKGROUND

This case is about an alleged government conspiracy to conduct research upon Plaintiffs without their permission. Plaintiffs, who range in age from forty-nine to seventy-three, allegedly suffer from "unusual health issues and Electromagnetic Hypersensitivity." ECF No. 1 ¶ 5 ("Compl."). Their symptoms include "central nerve damage, diabetes, peripheral neuropathy, depleting body tissue, organ damage, heart palpitations, kidney irregularities, Havana

Syndrome[,] . . . and bacterial infections," as well as significant mental anguish.  *Id.* ¶ 14.  Although they admit that "[l]ogically, one would think that [their] current medical ailments result from negligence or natural causes," Plaintiffs discern a different origin for these symptoms: microscopic bio-medical devices implanted within them by the government.  *Id.* ¶ 15.  They explain that their "bodies are currently sending and receiving [radio frequency] signals" and that they have traced these frequencies to millimeter-long medical devices implanted within their bodies.  *Id.* ¶¶ 5–6.

      Plaintiffs claim that the government implanted these devices.  They argue that "[t]hrough medical records, the Department of Defense (DOD) and its components, grant recipients, physicians, researchers, clinicians, and universities identified and targeted the Plaintiffs who fit 'their' criteria for various controlled studies."  *Id.* ¶ 3.  According to Plaintiffs, medical providers partnered with the government then inserted the devices into Plaintiffs during routine medical procedures.  *Id.*  Plaintiffs claim the government scans them remotely through these devices and that doing so sends "an electrical pulse into either the nervous system or muscle[s]," which "torment[s] them remotely at any time for the [government and its partners'] financial gain and research."  *Id.* ¶ 9.

      Plaintiffs allege a corrupt bargain between the medical community and the government to study their biological functions.  Plaintiffs report that they "cannot receive proper medical care" because "[h]ospitals and physicians go to great lengths to conceal, and keep the non-consensual human experimentations in place, for all parties financial gain."  *Id.* ¶ 11.  This effort involved "labeling the [radio frequency] devices and their damage, as being lymphomas, diabetes, hypertensions, kidney irregularities, obese fatty tissue," and other regular medical issues consistent with the Plaintiffs' symptoms and age.  *Id.*  Plaintiffs claim, perhaps metaphorically, that they "are currently watching their bodies being traded daily as commodities on the NASDAQ stock market."  *Id.* ¶ 19.

      Plaintiffs brought suit in this Court based on these allegations.  They seek injunctive relief to prevent the government from monitoring them further and claim various civil conspiracies to violate the Fourth, Fifth, Eighth, and Fourteenth Amendments.  *Id.* ¶ 38.  Moreover, they make broad allegations of a "criminal conspiracy" between the government and its contractors, *id.* ¶ 1, and request $4 billion in damages, *id.* at 14.  The government moved to dismiss the case for lack of jurisdiction and failure to state a claim upon which this Court can grant relief under Rule 12(b)(1) and Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  ECF No. 5.  In response to the government's claim that this Court lacks jurisdiction over their claims, Plaintiffs maintain that their complaint was "rooted in statutory and regulatory violations, squarely placing it within . . . . the court's authority to adjudicate claims based on any Act of Congress or regulation of an executive department."  ECF No. 7 at 6.  They also moved for a protective order, ECF No. 8, upon which the Court stayed briefing until it determined that it had jurisdiction over the case, ECF No. 9.

## DISCUSSION

A.   **Legal Standard**

Under RCFC 12(b)(1), the Court must dismiss any claim that does not fall within its subject matter jurisdiction.  In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all factual allegations made by the non-moving party and draw all logical inferences in the light most favorable to that party.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Although the Court holds a *pro se* litigant's pleadings to "less stringent standards than formal pleadings by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements," *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citations omitted).  Accordingly, a *pro se* plaintiff still "bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

This Court, like all federal courts, is a court of limited jurisdiction.  Under the Tucker Act, the Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States . . . ."  *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)).  Rather, to state a claim within this Court's Tucker Act jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States."  *Id.*  Stated differently, a plaintiff must state a claim based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).

Even if this Court has jurisdiction over a claim, the Court must nonetheless dismiss the claim under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  If the plaintiff states facts in his or her pleadings that, even when viewed in the light most favorable to the non-movant, are "fatally flawed in their legal premises," the Court must dismiss the claim.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160–61 (Fed. Cir. 1993).

B.   **Analysis**

Plaintiffs' claims are not cognizable in this Court regardless of their truth or falsity.  In general, the Court's subject matter jurisdiction extends only to monetary claims against the federal government not sounding in tort.  28 U.S.C. § 1491(a)(1).  Despite Plaintiffs' claims to the contrary in their response to the government's motion to dismiss, the essence of their case is

a claim against the government for monetary damages based on injuries to their health and bodies. *See* ECF No. 7 at 10 (stating that Plaintiffs seek "monetary redress," and contending that "[t]he defendants have incorrectly labeled the plaintiff's claims as 'tort' or 'tortious,'" despite stating that "tort actions and civil rights constitutional violations can intersect under certain circumstances"). Plaintiffs' framing their claims as "deprivation[s] of their civil rights, public service privileges and immunities" does not eliminate the fact that they sound in tort and are, therefore, beyond this Court's jurisdictional reach. *O'Diah v. United States*, 722 F. App'x 1001, 1004 (Fed. Cir. 2018) (upholding dismissal of case in the United States Court of Federal Claims because the plaintiff's "allegations with respect to the United States government—such as fraud and the deprivation of civil rights—sound in tort"). Judges of this Court and the Federal Circuit have held many times that this Court lacks jurisdiction to entertain claims under the constitutional amendments Plaintiffs cite as bases for jurisdiction. *Burman v. United States*, 75 Fed. Cl. 727, 729 (2007) (finding no jurisdiction over Eighth Amendment claims); *Johnson v. United States*, 127 Fed. Cl. 529, 537 (2016) ("Because the Fourth Amendment is not a money-mandating constitutional provision, this court lacks subject matter jurisdiction over plaintiff's Fourth Amendment claim."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (stating that "counts alleging violation of . . . rights under the Due Process Clauses of the Fifth and Fourteenth Amendments [and] the Equal Protection Clause of the Fourteenth Amendment . . . . do not mandate payment of money by the government" and, therefore, are not within this Court's jurisdiction).

Plaintiffs' claims that bear the closest resemblance to those that fall within the Court's jurisdiction fail because they misconstrue the nature of such claims. Plaintiffs' response to the government's motion to dismiss states that "over 280 pages of fact-based evidence, such as medical images, frequency hedge fund accounts, and pertinent 'government contracts[,]' establishes the Federal Claims Court as the appropriate venue with jurisdiction over the plaintiff's case." ECF No. 7 at 11. Construed very liberally, Plaintiffs seem to argue that these contracts represent a "contract, regulation, statute, or constitutional provision that provides for money damages against the United States" because their claims for monetary damages are based on these alleged contracts. *See Smith*, 709 F.3d at 1116. However, merely citing a government contract, regulation, or statute is not sufficient for jurisdiction; the contract, regulation, or statute must itself entitle the claimant to the monetary damages it seeks. Plaintiffs have cited no such provision. Plaintiffs' allusions to criminal wrongdoing on the government's part related to the constitutional provisions and government contracts cited likewise do not fall within this Court's jurisdiction. *Brown v. United States*, 88 Fed. Cl. 322, 328 (2009) ("[T]o the extent that plaintiff is alleging criminal behavior on the part of federal employees, no jurisdiction resides in this court."). Moreover, even if Plaintiffs had "submitted conclusive evidence, such as CT scans and medical reports, verifying semiconductors implanted in their brains" by the government, as they claim they did, ECF No. 7 at 13, the Court would still lack jurisdiction over such claims, which almost certainly sound in tort.

The Court is also not the proper forum to grant the injunctive relief the Plaintiffs seek. *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 46–47 (2021) (explaining that this

4

Court can grant injunctive relief only in three cases: "1) in bid protest actions . . . (2) as 'incident of and collateral to' a monetary judgment . . . and (3) for certain types of nonmonetary [Contract Disputes Act] claims"); *see also Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1330 (2020) ("[T]he Court of Federal Claims 'does not have the general equitable powers of a district court to grant prospective relief.'" (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988)).  While this Court has injunctive powers in certain circumstances, Plaintiffs have not raised any such claims.  The Court, therefore, lacks jurisdiction to act on Plaintiffs' injunctive relief claims.

In sum, even assuming that Plaintiffs are the victims of a massive clandestine conspiracy between the government, hedge funds, and medical providers, this Court is not the forum in which they can obtain relief for their injuries.  This Court lacks jurisdiction to hear the tort, criminal, constitutional, and civil rights claims Plaintiffs allege and cannot award them the injunctive relief they seek.

## CONCLUSION

As the Court finds that it lacks jurisdiction over Plaintiffs' claims, the government's motion to dismiss is **GRANTED**.  Additionally, Plaintiffs' motion for a protective order is **DENIED**.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge